Good morning, Your Honors. Deanna Dotson on behalf of Mr. Castillo. I'd like to reserve two minutes for rebuttal. Sure. Thank you. The main issue in this case is whether or not there was probable cause to arrest Mr. Castillo before the illegal search and seizure. The district court ruled that there was probable cause, and it was based on the controlled by that was the reason for issuing the search warrant. However, if you look at the facts in the controlled by, first of all, this is a confidential informant that comes. He's a known drug user, comes and says, I, you know, think Mr. Castillo is dealing drugs in this particular house, and here's where it is. So they go out and locate the house. However, they don't do anything to have surveillance on the house to see who is coming and going from that house. They immediately set up a controlled by. They go out and make the controlled by. The confidential informant is given money, checked, you know, the normal procedures, watched as he drives up to the house. However, once he goes into the property, they are no He doesn't have any wires on him to have any kind of, show there's any communication between him and the person that's selling the drugs. He comes out five minutes later. They go and they check. Yes, indeed, he did come back with drugs. They tested his meth. However, they didn't follow up with anything. There was still no surveillance on the house to watch who was in there, who came out. They didn't check to see if, in fact, Mr. Castillo even lived there, and that wasn't his address. In the presentence report lists one address that he lived there since 99. There was another address that actually one of the agents put on their report after the search warrant listing another address, not the address of the home that was searched, and that was the address that was pulled up on an arrest record. So there was no verification that Mr. Castillo indeed was even living or was at that address. So if you look, there's nothing to substantiate what the confidential informant was saying. Who knows that this person was, didn't have a grudge against Mr. Castillo. We have no facts or evidence. The officer that did the affidavit, he did say that, yes, he had used that person two other times. However, this officer had only been in the narcotics task force for like two years at the time he testified, which was a year after the event took place. So in a year, he used this person twice. There was no information in the record as to facts behind those two other cases to show this confidential informant was reliable or not. Let's assume, I know you argue to the contrary, but assume for the purpose of my question that law enforcement had a valid search warrant issued upon a probable cause to be at that house. Wouldn't they have inevitably discovered the drugs that were on Castillo's person? No, because, Your Honor, Again, assuming the search warrant is valid, they go in the house and they find drug paraphernalia scales, that sort of thing, with residue on it. Okay, they found a drug scale, however, With residue on it? With, they assumed residue. Okay. However, that was found after the search of Mr. Castillo. After the search of his person? After the search of his person. And at the time that they went in, so you're saying that just because they found the scale? I'm asking. Okay. You're assuming then just because they found the scale, they wouldn't inevitably have been able to search him pursuant to a search incident to arrest? That's my question. Correct. Okay. The timing is off, Your Honor, because the scale, there's no evidence the scale was found prior to the search because it was documented in the record at the time they commenced the search and at the time they recorded the item seized from Mr. Castillo. I think you're misunderstanding Judge Hawkins' question. I'm interested in it, too. I think the question is, and he can correct me if I'm wrong, but the question is wouldn't they have discovered it inevitably anyway because they would have, even though the timing was different, if, forgetting the search that occurred, if they had discovered the residue, they would have arrested him and they would have found it. I think that's the question. Why wouldn't they inevitably have arrested him on the scene after finding the residue on the scale? Well, if they had found the scale and arrested him, then they would have been entitled to search, correct? Okay. However... He's detained there, so he's not... The inevitable discovery issue, first of all, I'm objecting that it was not raised in the lower court and that wasn't even brought up as far as the search incident to a lawful arrest was brought up because the judge said they had probable cause to start with. So on the inevitable discovery rule, I don't believe it falls under that. It would fall under if they had probable cause to arrest him. However, I don't think just finding the scale would have given probable cause to arrest Mr. Castillo for a number of reasons. Well, okay, the scale was found in a downstairs room, which there's no evidence to who that belonged to. And if you'll look, and I brought a picture, the pictures in the evidence are not very big, but if you look at the picture that's in the evidence, excessive record, this is a large house. This wasn't a one-bedroom house. Many rooms in this house. So who lived there? We don't know who lived there. We don't know who was in that room, who had possession of the items in that room where the scale was found. And there was never any evidence to connect the scale to Mr. Castillo. So if, in fact, the scale did give rise to arrest somebody, arrest which one of the three or if any of them. Mr. Castillo was found in the carport area with a caulking gun in his hand. It was a time of day when he possibly could be working there. We don't know who even lived there. There's no evidence to show who ever lived there in the record. So he could have been working there. If he was just a laborer working there, then who's to say that scale belonged to him that was found in one of the rooms. So I don't think there's enough evidence to tie the scale to Mr. Castillo for probable cause to say he's the one that possessed the scale, so therefore we can arrest him and now we have the authorization to search him and confine the drugs. I don't think there's enough of a connection there, enough probable cause to arrest Mr. Castillo and then eventually be able to search for the items that were found. So I don't believe there's a connection there. And there's no evidence in the record at all to show a connection of the scale. Other than the C.I. had been in the house and bought drugs from him. But we don't know it was Mr. Castillo. All we know is that the C.I. said that, but there's no verification of that. There's no other evidence to show Mr. Castillo was ever even in that house that day. There's nothing there. So they could have stayed around and watched the house to see who was coming and going. There was no surveillance. There was nothing to follow up. They didn't even know the identity of Mr. Castillo at the time of the buy. They only after, when they went to do the search warrant, did they pull up his records. I thought the C.I. pointed him out. No, the C.I. did not point him out. There was another agent who had seen his picture that they had pulled up on the arrest. That's him when they ran. Okay. You have a little under two minutes. You can save for rebuttal. Thank you for  Thank you, Your Honor. Can I hear from the government at this time? Good morning, Your Honors. Markin Tsiong, assistant U.S. attorney for the District of Hawaii. May it please the Court. As the District Court found in this case, there  was no evidence that Mr. Castillo was involved in the search warrant. We have a reliable informant who was used by this officer on two prior occasions. He had been used by other officers in his department on numerous other occasions. He had never provided false or erroneous information. When Officer Uyatake had used him, he had both times, the information had led to search warrants, which led to the discovery of drugs. So Angulo Lopez tells us this confidential informant is to be deemed trustworthy, especially, even more so, when it's the same type of crime, which obviously these were all drug cases. The appellee would like to just ask the Court to discount and act like the CI doesn't exist, but Angulo tells us that he must be deemed trustworthy based on that track record. Do you think there was probable cause to arrest Castillo based on the CI information alone? I do, Your Honor. And that's, I believe, exactly what the District Court found. I believe that CI information, along with the controlled buy that was done on the 26th of August, which corroborated exactly what the CI had said. He said, I go to this house, I buy directly from Mr. Castillo. He described the residence. The officers did go. There was surveillance beforehand. They went to the location, corroborated it. The description fit, the fence description, the type of house, all fit what the CI had said. So they didn't need the search at all, in your view? The search. They could have just gone out and arrested him without any further evidence. There's no reason to have the search. Which search are you referring to, Your Honor? I'm talking about the search of the house. Correct. Correct. There was right. I mean, that's the government's position. Correct. There was probable cause no matter where they would have found Mr. Castillo with us at that point. I think there was further probable cause because they were there and he was there at that residence again, which further corroborated the CI. What you're saying is whether or not – well, the question of whether or not there was probable cause to arrest Mr. Castillo doesn't depend on what was found in the search of the house. Absolutely. Correct. Assuming we disagree with you on that, where does that leave you? Well, then we're at the inevitable discovery argument, and I do not agree with Appellee. This issue was raised before the district court. It was argued to – And that's based on what? Inevitable discovery, I mean, is based on what? The inevitable discovery of the drugs would have been based on his arrest for the drug scale that was found at that residence in the search. Well, there's – it's not too clear when the scale was found, right? Well, that's correct. I think even Judge Mulway indicated at – and this is at SCR 146 – that it wasn't exactly clear what the timing was. It was – there's like a five-minute time span whether, you know, the search was – of Mr. Castillo was going on at the same time as the search of the residence, and which came first isn't quite clear. But I don't really think it matters in the end. What matters is that they found the scale. They found it in the bedroom of this house, which was uninhabited, still under construction. In the room where the scale was found, there was a sleeping bag on the floor with some belongings. There was no furniture otherwise in the house. Why does that help you? I mean, it seems to me that kind of hurts you because you have three people found at the scene. We don't know who's been there. There's no testimony that this is Castillo's bedroom. Well, I think, again, the corroboration from the confidential informant that he had been there on numerous occasions to buy drugs from Castillo, and when they go to that residence to execute the search warrant, there's Mr. Castillo again. So I think to meet the probable cause standard, that would have been enough. If we're talking about beyond a reasonable doubt, that may be a different – a different situation. But here, of course, we only are referring to a probable cause standard. This issue was raised at the district court. That's at SCR 166 and 167. The government had initially raised this in our initial response to the motion to suppress, which was filed on February 14, 2005. I don't think that's in the SCR or ER, but it's part of the main record. I have copies, if the Court would like me to supplement the record. Of course, the burden for the inevitable discovery is only by a preponderance of the evidence. Clearly, the police officers were in a place they were supposed to be. They did what they were supposed to do. They got a search warrant. They were legally at that place. They found the scale. In the experience of the officers, they saw residue, which appeared to be drug residue to them. They could clearly have arrested Mr. Castillo on that point and then conducted the search incident, at which point they would have found the bottle containing the methamphetamine and crack cocaine. So we believe, first of all, that the district court's factual findings were correct. They were not clearly erroneous. There was probable cause based on the CI information and the CI by the day before. Even if the Court disagrees with that, that under the inevitable discovery doctrine, based on the discovery of the drug scale, he still would have been arrested and that same bottle would have been found. Roberts. Thank you for your argument. Rebuttal. I still have to disagree with what the government has to say about the reliability of this informant, because he didn't say that he purchased drugs there before. He said he knew that he was selling drugs from that house, I believe. And that still doesn't give him the reliability that this was Mr. Castillo, because, again, there was no evidence to show that he was there. And why would he be living there anyway? He had a wife and two children in a residence that he was living at. In fact, for the bond that was put up for his bail, he was released on bail after his arrest, was that a property. It doesn't give the address of the bail, but you wouldn't be putting up this, it didn't say it was this Kawiki house. It was a residence where he was living. So there's no evidence to show that he was actually living in that house, residing in that house, or he was the person that actually sold the drugs to the CI on the undercover buy. There's just no evidence. Additionally, the officer, Yutaki, that actually made out the affidavit for the search warrant, he stated at that time during his testimony that he did not believe there was probable cause that he could have arrested him prior to finding the items on his person. So therefore, he didn't believe there was probable cause at the time. Otherwise, he should have gotten an arrest warrant. You just can't go in and arrest somebody if, in fact, it was his residence, unless they had probable cause, they would have needed the arrest warrant, which was not obtained. You're not arguing for a rule that a policeman's determination of probable cause or not should be binding? No, I'm arguing that if the- It's a factor to be considered. It should be considered. I mean, if he thought there was probable cause at the time without even having to go on the search, then he could have obtained the arrest warrant and gone out and arrested Mr. Castillo right then and there without going through the search. I don't believe there was enough done, even for the search warrant, in order to warrant that they, and the officers overstepped their bounds. Even the court was concerned that they all thought they had authority to search everybody entirely and open all containers. So they clearly overstepped their bounds entirely. Okay. Thank you, Your Honor. Thank you for your argument. Thank you both for your argument. The case just argued will be submitted for decision. We'll proceed to the next case on the argument calendar, which is Lasson v. Aloha Airlines. Are counsel present? He's not. I think we have one counsel present. Have you seen your adversary in the environs? I have not, Your Honor. We'll put it over to the end of the calendar. If he doesn't show up by the end of the calendar, we'll submit it. Okay. Thank you. And you can go home and say you gave the most brilliant argument I ever heard. That's what I plan on doing. Thank you. All right. Thank you, Your Honor.
judges: Noonan, Hawkins, Thomas